**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **SHARON DARLENE REDUS** | ) | |
| | ) | |
| v. | ) | **Case No. 3:22-cv-01029** |
| | ) | |
| **REVENUE CYCLE SERVICE** | ) | |
| **CENTER, LLC.** | ) | |

TO:  **Honorable Waverly D. Crenshaw, Jr., United States District Judge**


### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered January 3, 2023 (Docket Entry No. 7), this *pro se* action was referred to the Magistrate Judge for pretrial proceedings.

Pending before the Court are motions for summary judgment that have been filed by Plaintiff Sharon Darlene Redus (Docket Entry No. 60) and by Defendant Revenue Cycle Service Center, LLC (Docket Entry No. 61).  For the reasons set out below, the undersigned respectfully recommends that Plaintiff's motion (Docket Entry No. 60) be **DENIED**, Defendant's motion (Docket Entry No. 61) be **GRANTED**, and this action be **DISMISSED** in its entirety.

### I.  PROCEDURAL BACKGROUND

Sharon Darlene Redus ("Plaintiff") is a resident of Antioch, Tennessee.  she filed this *pro se* civil action in the Davidson County Circuit Court against her former employer, Revenue Cycle Service Center, LLC ("Defendant" or "RCSC") in November of 2022, seeking damages based upon allegations of racial discrimination and other wrongdoings in the workplace.  RCSC timely removed the case to this Court on the basis of federal question jurisdiction.  *See* Notice of Removal (Docket Entry No. 1).

Early proceedings involved multiple amendments by Plaintiff to her complaint, *see* Docket Entry Nos. 8, 11, 14, and 18, and the filing of two motions to dismiss by Defendant. *See* Docket Entry Nos. 4 and 15. The first motion to dismiss was denied without prejudice, but the second motion to dismiss was granted in part, dismissing some claims and narrowing the permissible claims in the case to claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.* ("Title VII"), for disparate treatment on account race and color and for retaliation. *See* Memorandum Opinion and Order entered February 2, 2024 (Docket Entry No. 37); Report and Recommendation entered September 18, 2023 (Docket Entry No. 24). The Court dismissed Plaintiff's Title VII hostile workplace claim for lack of administrative exhaustion and dismissed her state law intentional infliction of emotional distress claim for failure to state a claim for relief. *See* Memorandum Opinion and Order. The Court also found that Plaintiff's pleadings could not reasonably be construed to assert viable claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12102, *et seq.* ("ADA"), Tenn. Code. Ann. §§ 39-16-510 and 66-28-514, or the Tennessee Human Rights Act, Tenn. Code. Ann. § 4-21-101 *et seq. See* Report and Recommendation at 8.

As narrowed by the Court's ruling, Plaintiff's Second Amended Complaint ("SAC") (Docket Entry No. 18) is the operative pleading in this case. An initial scheduling order and amended scheduling order were entered that provided for a period of pretrial activity, including a period for discovery by the parties. *See* Docket Entry Nos. 42 and 48. The parties made two attempts at case resolution but were unable to settle the case. *See* Status Reports (Docket Entry Nos. 41 and 55-57). All scheduling order deadlines have now passed. A jury trial has been requested by the parties but has not been scheduled pending resolution of the dispositive motions.

2

## II. PLAINTIFF'S CLAIMS

Plaintiff's 34-page second amended complaint follows a largely narrative form and is somewhat disjointed in terms of setting forth a chronology of factual events. Plaintiff supports her pleadings with hundreds of pages of exhibits and documents. *See* Docket Entry Nos. 1-2 to 1-4, 11-1 to 11-50, and 14-1 to 14-28. Plaintiff's introductory statement of her claim is as follows:

> racial discrimination, retaliation, falsifying legal documents, trickery, constant harassment, bullying, manipulation of screenshots, tampering with production numbers, submitting false reports to Human Resources on numerous occasions, altering Production Numbers by decreasing monthly count, sabotaging audits, preventing overtime based on false reports, restricting bonuses, deliberately depriving me of work from home, deceiving an EEOC State Government Investigator (Karen Broadway) during a State Investigation, by the Defendant Pamela (Becky) Baumann of {Revenue Cycle Service Center}. The work environment was constantly (Hostile), deliberate and torturous; that I fell sick with Stress Induced Belly's Palsy (Paralysis on the left side of ace and neck).

(Docket Entry No. 18 at 4.) Plaintiff's administrative charge of discrimination, which alleged retaliation and discrimination based on race, sheds some light into the factual background of the lawsuit, stating:

> Amended charge to correct Respondent's name to Revenue Cycle Service Center, LLC. I worked as a Denial Appeals Coordinator from January 2019 until my termination on November 5, 2021. The company has more than fifteen employees. I believe that I have been discriminated against and retaliated against due to my race (Black). I was subjected to different terms and conditions of employment. I was held to different standards. I was disciplined and ultimately terminated. I complained about the disparate treatment in my department and was provided no relief. Others of my race (Black) were treated the same and either quit or were terminated. Individuals who were race (Black) and were terminated or quit were replaced by race (White) employees. I feel that myself along with other race (Black) as a class have been subjected to discriminatory and retaliatory treatment in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Docket Entry No. 14-2 at 5.0

RCSC is a remote subsidiary of Community Health Systems, Inc. ("CHS"). Plaintiff's job as a Denial and Appeals Coordinator involved overseeing aspects of pursing an appeal from an insurance company's denial of a request for medical reimbursement for health care services that had been provided by one of CHS's affiliated hospitals. The events underlying Plaintiff's claims began in late 2020 when Pamela Rebeca "Becky" Baumann ("Baumann") became the Denials Manager for the Denials Department at RCSC and began overseeing and supervising the employees in the Denials Department, including Plaintiff. At the time, Plaintiff's team leader was Stephanie Crook Angus ("Angus") and the Denial and Appeals Operation Director to whom Baumann reported was Makeyta Tipler ("Tipler"). Beverley Cooper ("Cooper") was RCSC's HR Manager and Christine Rasmussen ("Rasmussen") was RCSC's Chief Operating Officer.

The gist of Plaintiff's lawsuit is that Baumann engaged in an obsessive, personal vendetta against her because Plaintiff is an "Alpha Black Woman . . . who couldn't be easily intimidated," (Docket Entry No. 18 at 19), and because Baumann wanted to replace Plaintiff. (*Id.* at 4.) The voluminous allegations against Baumann in the second amended complaint need not be fully recounted herein. Succinctly summarized, Plaintiff alleges that Baumann excessively scrutinized her work performance, unfairly criticized her, and constantly attempted to harass and intimidate her, to the point that Plaintiff developed stress induced Bell's palsy that caused paralysis in her face. (*Id.*) Plaintiff contends that although she had a stellar work history prior to being supervised by Baumann, Baumann sabotaged audits, forged and manipulated work reports and production numbers, falsely created or manipulated screen shots and e-mails, accused her of working off-the-clock, and falsely conveyed to management that Plaintiff was not productive, did not meet work goals, and made mistakes in her work. (*Id.* at 13-14 and 19.) Plaintiff alleges that Baumann blocked her from

overtime, bonuses, and working remotely from home and that, ultimately, Plaintiff was terminated from her employment after training two white males for her job. (*Id*. at 12 and 22-23.) She contends that Angus was a cohort to Baumann's actions and the human resources department and that the other management employees were part of a "systemic racism and injustice team" at RCSC that permitted Baumann to abuse her power and "were diabolical in their determination to destroy" Plaintiff. (*Id*. at 2-3 and 5.)

### III.  MOTIONS FOR SUMMARY JUDGMENT

As set out in the Court's scheduling order, the deadline for filing dispositive motions was October 31, 2024. (Docket Entry No. 42 at 4.)  The two noted motions were timely filed.[1]

Plaintiff's "motion for summary judgment" sets out numerous wrongdoings that she asserts were committed by Defendant and its management employees, makes scathing allegations against Baumann,[2] refers to various federal and state statutes, codes, and regulations that she contends were violated, and states that she "would like to exercise my rights to maximum punishment for all involved in destroying my livelihood." *Docket Entry No. 60 at 31.)  Although Plaintiff's motion has 365 pages of exhibits attached (Docket Entry Nos. 60-1 to 60-3), it is not supported by a separate memorandum of law or a separate statement of undisputed material facts.

---

[1]  Plaintiff has also made a second filing styled as a "motion for summary judgment." (Docket Entry No. 65.)  However, this filing appears to actually be a response to Defendant's motion for summary judgment since it specifically refers to being filed by the due date of December 13, 2024, that was set by the Court for the filing of a response. (*Id*. at 1.)  To the extent that this filing is meant by Plaintiff to be a second motion for summary judgment, it was not timely filed.

[2] Plaintiff refers to Baumann as "like a serial killer," "no better than a serial killer," a "racial sociopath," and a "sick and dangerous person" with "psychopathic traits and characteristics" who should be "institutionalized, imprisoned, and fined."  (Docket Entry No. 18 at 1-2, 4, 25-28.)

5

By its motion, Defendant asserts that the undisputed evidence shows that Plaintiff was terminated because of numerous unprofessional and insubordinate communications with her supervisors, some of which occurred after she had already been counseled and given a final warning about this type of behavior and the need to correct the behavior. In light of this evidence, Defendant argues that it is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure because Plaintiff cannot show a *prima facie* case of either racial/color discrimination or of retaliation and that, even if a *prima facie* case is shown, she cannot show that Defendant's proffered reason for her termination was a pretext for unlawful discrimination or retaliation. Defendant's motion is supported by: (1) excerpts from the deposition of Plaintiff and cited exhibits from the deposition (Docket Entry No. 61-1); (2) the declarations of Kathryn Toungette (Docket Entry No. 61-2), Ginger Hearn (Docket Entry No. 61-3), and Baumann (Docket Entry No. 61-4); (3) a memorandum of law (Docket Entry No. 62); and, (4) a statement of undisputed material facts (Docket Entry No. 63). The Court has also considered the parties' respective responses and replies to the two motions. *See* Plaintiff's Response (Docket Entry No. 65); Defendant's Response (Docket Entry No. 66); Plaintiffs' Reply (Docket Entry No. 67); and Defendant's Reply (Docket Entry No. 68).

After filing her reply, Plaintiff made two additional filing that oppose Defendant's motion for summary judgment. *See* Memorandum in Opposition (Docket Entry No. 69) and "Motion – Questions, Request, and Concerns" (Docket Entry No. 71). However, the Court's briefing schedule specifically does not permit the filing of sur-replies, *see* Order entered November 4, 2024 (Docket Entry No. 64), and thus Plaintiff's additional filings have not been considered by the Court in review of Defendant's motion for summary judgment.

6

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 is appropriate if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). "By its very terms, this standard provides that the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (citation and quotations omitted). Once the moving party has met this burden, the nonmoving party is not entitled to a trial merely based on allegations but must present evidence supporting its claims or defenses. *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The nonmoving party must present significant probative evidence that will

7

reveal that there is more than some metaphysical doubt as to the material facts. *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017).Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252). In the end, there must be evidence on which a trier of fact could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson*, 477 U.S. at 249. Where the parties file cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

## V. ANALYSIS

### A. Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A discrimination claim under Title VII must be

supported by direct evidence or by circumstantial evidence that raises an inference of discrimination.

*Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence is evidence which, if

believed, requires no inferences to conclude that a discriminatory animus was a motivating factor in

the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If the plaintiff

has no direct evidence and relies instead upon circumstantial evidence, the Court utilizes the burden

shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, the plaintiff is first required to establish a *prima facie* case of unlawful

discrimination by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff

was qualified for the job at issue; (3) the plaintiff suffered an adverse employment action; and (4) the

job was filled or the plaintiff was replaced by a person outside the protected class, or the plaintiff

was treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare

Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

If a *prima facie* case is shown, the burden of production shifts to the defendant to articulate a

legitimate, nondiscriminatory reason for the challenged conduct. *St. Mary's Honor Ctr. v. Hicks*,

509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from

the case, and the plaintiff must then show that the reason offered by the defendant is a pretext for

discrimination. *Id.* at 508. Whatever method of proof is used, the ultimate burden is on the plaintiff

to show that the defendant engaged in unlawful conduct under Title VII. *Id.* at 518.

Title VII's anti-retaliation provision provides that "[i]t shall be an unlawful employment

practice for an employer to discriminate against any of his employees or applicants for employment .

. . because he has opposed any practice made an unlawful employment practice by this subchapter,

or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Much like a discrimination claim, a retaliation claim must be proven with either direct evidence or through indirect, circumstantial evidence via the burden-shifting analysis. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008) (citation omitted). Whatever the method of proof that is used, a plaintiff must ultimately "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). Retaliation claims that are premised upon circumstantial rather than direct evidence are analyzed under the *McDonnell Douglas* burden-shifting framework. *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020). Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case of retaliation by showing: (1) the plaintiff engaged in protected activity; (2) the exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Id*. If the plaintiff carries this burden, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. *Id*. If the defendant meets this burden, the plaintiff must show that the articulated reason is a pretext for retaliation. *Id*.

## B. Plaintiff's Motion For Summary Judgment

Plaintiff's motion is properly denied because it is both procedurally and substantively deficient. These deficiencies cannot be overlooked merely because of Plaintiff's *pro se* status.

This Court's Local Rules impose procedural requirements on the filing of motions for summary judgment. Local Rule 56.01(b) requires that every motion must be accompanied by a

10

separately filed memorandum of law that cites supporting authorities and that shall not exceed 25 pages without leave of the Court. Local Rule 56.01(c) further requires that a motion for summary must be accompanied by a separate statement of undisputed material facts in which each fact "must be numbered separately and must be supported by citation to materials permitted by Fed. R. Civ. P. 56(c)(1)." The Court's scheduling order specifically advised the parties that all summary judgment motions "shall comply" with Rules 7.01 and 56.01 of the Local Rules of Court. (Docket Entry No. 42 at 4.)

*Pro se* parties are not excused from complying with the Court's procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Matthews v. Copeland*, 286 F.Supp.3d 912, 916 (M.D. Tenn. 2017) ("A litigant, whether proceeding *pro se* or through counsel, ignores local rules at his or her peril."). Plaintiff's motion for summary judgment unquestionably does not comply with the Local Rules because it is not accompanied by either a separate memorandum of law or a separate statement of undisputed material facts. Further, even if Plaintiff's motion was liberally construed as a combined motion and a supporting memorandum – which is not permitted by Local Rule 56.01(b) – it is 33 pages in length and therefore violates the page limitation requirement. Because Plaintiff has not complied with this Court's Local Rules in the filing of her motion, her motion is procedurally deficient and may be denied for that reason alone. *See Tolson v. Washburn*, No. 3:19-CV-00175, 2023 WL 1795804, at *8 (M.D. Tenn. Feb. 7, 2023) (Richardson, J.) (noting that "[d]enial of Plaintiff's motion for summary judgment is also proper on the grounds that he has failed to comply with the Court's local rules."); *Plemons v. Washburn*, No. 3:18-CV-00845, 2019 WL 6273315, at *1

11

(M.D.Tenn. Nov. 25, 2019) (Campbell, J.) (adopting recommendation that the *pro se* plaintiff's motion for summary judgment be denied for failure to comply with procedural rules for such a motion).

Furthermore, the motion is appropriately denied because, despite the voluminous exhibits[3] attached to the motion and the numerous allegations made by Plaintiff about Baumann and others, Plaintiff's motion fails to present a cogent legal argument showing that she is entitled to summary judgment in her favor with respect to her Title VII claims.  Indeed, her motion contains no actual legal argument at all with respect the applicable standards for proving claims brought under Title VII.  Instead, her motion is largely filled with references to claims that are not a part of this case, claims that have been dismissed, or alleged violations of criminal statutes that are likewise not a part of this case.  In the end, Plaintiff simply fails to show that she is entitled to summary judgment in her favor as a matter of law.

## C. Defendant's Motion For Summary Judgment

The Court finds that granting of Defendant's motion for summary judgment is warranted. Based upon the evidence that is before the Court, no reasonable jury could find in favor of Plaintiff on her Title VII claims of discrimination and retaliation.  Any questions of fact that exist do not rise to the level of genuine issues of material fact that require resolution by the trier of fact at trial.

Initially, the Court notes that Plaintiff's response to Defendant's motion suffers from shortcomings that cannot be disregarded simply because she is proceeding *pro se*.  First, her

---

[3] The Court notes that the majority of the exhibits attached by Plaintiff to her motion are not merely copies of documents or other materials but contain additional statements, notes, or arguments from her about what she believes that the exhibits mean or show.  The inclusion of such statements, notes, or arguments on the exhibits themselves is neither a proper method of providing supporting exhibits nor a proper method of presenting arguments to the Court.

12

response contains numerous factual assertions that are not supported by affidavits or by declarations that are sworn to under the penalty of perjury. Unsworn statements of fact cannot be considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991). Second, although Plaintiff includes in her response arguments about several items of evidence that she refers to as "material of undisputed facts" (Docket Entry No. 67 at 3-21), she has not actually responded to Defendant's statement of undisputed material facts. By application of Local Rule 56.01(g), the asserted facts are deemed undisputed because of Plaintiff's failure to file a timely response to the statement of undisputed material facts. Third, although Plaintiff sets forth lengthy assertions of why she believes that she was treated wrongfully and of what she believes is evidence of Baumann's mistreatment of her, she fails to directly address the legal arguments for summary judgment made by Defendant in its motion. Nonetheless, in light of Plaintiff's *pro se* status, the Court has given Plaintiff a great measure of leeway in the consideration of her response to Defendant's motion and has engaged in as full a review as possible of the merits of her claims.

As noted *supra*, Plaintiff's hostile workplace claim has already been dismissed by the Court.[4] Further, Plaintiff has offered no direct evidence that she was subjected to race/color discrimination.[5]

---

[4] Plaintiff's hostile workplace claim was dismissed for lack of administrative exhaustion. Nonetheless, the Court notes that there is absolutely no evidence in the record of any type of racially tinged workplace harassment, let alone severe and pervasive racially tinged harassment. Such evidence is necessary to succeed on such a claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). *Khalaf v. Ford Motor Company*, 973 F.3d 469, 482-83 (6th Cir. 2020); *Phillips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017).

[5] Although Plaintiff brings her Title VII discrimination claim based on both race and color, she does not distinguish these claims as separate claims and proceeds as if they are a joint claim.

13

Thus, Plaintiff's Title VII discrimination claim is analyzed in accordance with the *McDonell Douglas* burden shifting analysis that is linked to a discrete employment action that can be viewed as materially adverse to her. *Johnson*, 319 F.3d at 865-66.

Plaintiff's termination from employment is unquestionably a materially adverse employment action. Although Defendant argues that Plaintniff is unable to show a *prima facie* case based on her termination because there is no evidence that she was replaced by a person outside the protected class or that she was treated differently than similarly situated employees outside the protected class (Docket Entry No. 62 at 14-15), the Court finds it most expedient to presume that Plaintiff has met her burden of establishing a *prima facie* case and move on to the next phase of the burden shifting analysis, which looks at whether there is evidence that the proffered reason for Plaintiff's termination was a pretext for discrimination.[6]

Defendant sets forth that Plaintiff was terminated because of repeated instances of unprofessional and inappropriate communications by her to management, which were viewed by management as insubordination and unprofessional behavior, and which had continued despite Plaintiff being given a final written warning and being counseled about such behavior. *See* Declaration of Kathryn Toungette (Docket Entry No. 61-2) at ¶¶ 11-22; Declaration of Ginger Hearn (Docket Entry No. 61-3) at ¶¶ 6-21. These communications are accurately summarized in Defendant's supporting memorandum (Docket Entry No. 62 at 15-17), and need not be set out in full herein but include:

---

The Court follows suit and analyzes the claims together.

[6] Nevertheless, to the extent that Plaintiff is unable to establish a prima facie case, that is an additional basis supporting Defendant's motion for summary judgment.

14

1) an e-mail in which Plaintiff declared to a group of her supervisors, "This conversation has exhausted itself," *see* SUMF (Docket Entry No. 63) at ¶ 18;

2) an e-mail in which Plaintiff stated to Baumann, "Do not call me a liar. I do hear well and read well. My comprehension is sound, if the issue is explained well," *id*. at ¶ 24;

3) an e-mail in which Plaintiff stated to Baumann, "Thank you for the clarification; which is not true," *id*. at ¶ 25;

4) an e-mail in which Plaintiff stated to Baumann, " Your statement is untrue. So today, the rules changed for me only. This is the most egregious twist of words in order to falsely reduce my quality of work. . . . I didn't expect more from you. It's been a hostile and combative environment from day one of your arrival. I try my best to give you quality and quantity, but I continuously am unappreciated. I don't like when someone attacks my reputation based on falsehood or fabrication," *id*. at ¶ 26;

5) an e-mail in which Plaintiff stated to Angus, "Stephanie, it will always be an Account. That's what we do. Duh!" *id*. at ¶ 29;

6) an e-mail in which Plaintiff stated to three upper level RSCS management employees, "The Saga continues. I guess Baumann wasn't told to put this Drama behind her. Your manager; now hired as Director after falsifying legal documents and embellishing legal documents with frivolous 'template' and 'non production report' issues, is in part a CHS's justice for some," *id*. at ¶ 60;

7) an e-mail in which Plaintiff stated to Rasmussen, "Why is it impossible to be fair? I give you my best and you just spit on me. . . . Maybe if the situation was reversed; your view & punishment would be very different. Disappointed, but expected," *id*. at ¶ 72;

15

8) an e-mail to Heard and Rasmussen that included two large memes, which stated in bold capital letters, "KARMA has no DEADLINE," and "KARMA NEVER LOSES AN ADDRESS," *id.* at ¶ 77; and,

9) an e-mail to Angus in which Plaintiff stated, "When you were coaching me; I coached you to let you know there were more options in conveying Approved Authorizations; if BRIA is Down. Listening can be beneficial and your 1 way is not the only way," and "Your coaching statement isn't constructive. Your wording is only used to cause distress. Constant negativity and subjectivity are learned behavior & if you get more enjoyment from being negative than being constructive; it will continue." *Id.* at ¶ 88.

An employer's burden of articulating a legitimate, non-discriminatory reason for the challenged employment action is merely a burden of production, not of persuasion, and it does not involve a credibility assessment. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009). Insubordination by an employee has routinely been found to be a legitimate reason to terminate employment. *See Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (stating that failure to follow instructions and directions constitute legitimate reason for discharge); *Block v. Meharry Med. Coll.*, 723 F.App'x 273, 280 (6th Cir. 2018) (finding that unprofessional behavior is a valid nondiscriminatory reason for termination); *Arnold v. Marous Bros. Const.*, 211 F.App'x 377, 381 (6th Cir. 2006) ("This court [the Sixth Circuit] has confirmed that insubordination can constitute legitimate reasons for termination."); *Shorter v. Magneti Marelli of Tennessee, LLC*, 613 F.Supp.3d 1044, 1052 (M.D. Tenn. 2020) (insubordination is a legitimate reason for termination). Accordingly, the Court finds that Defendant has met its burden of proffering a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's employment.

16

The burden thus shifts back to Plaintiff to show that the stated reason is pretextual. "At this stage, [Plaintiff] has the burden to produce 'sufficient evidence from which a jury could reasonably reject [Defendant's] explanation of why it fired her.'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "She can accomplish this by proving '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her discharge], or (3) that they were insufficient to motivate discharge.'" *Id.* (quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)). "Regardless of which rebuttal method is employed, the plaintiff retains the ultimate burden of producing 'sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants intentionally discriminated against h[er].'" *Imwalle*, 515 F.3d at 545 (quoting *Johnson*, 319 F.3d at 866). To demonstrate pretext, a plaintiff must show that the employer's proffered reason for terminating employment "was not the real reason for its action, and that the employer's real reason" was discrimination. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc).

Which of the three basis Plaintiff is relying upon to show pretext is entirely unclear from her response to the motion because her response is primarily directed at recounting alleged wrongdoings by Baumann, justifying Plaintiff's work production and performance, and referencing federal and state statutes that are not at issue in this case. (Docket Entry No. 65.) Plaintiff does not directly address Defendant's legal arguments or the issue of pretext, and the only apparent arguments made by Plaintiff that challenge Defendant's proffered explanation for her termination are:

(1) the statement "I (Sharon Redus) was terminated for asking a question, making a suggestion to improve the Appeals Process, and once again letting the Auditor know that

17

"Downgrades" aren't subject to An Appeal & there's no need to Prep and Assign account to the Clinical Team," Docket Entry No. 65 at 4;

(2) the statement "According to Pamela Becky Baumann, Kathryn Toungette, Stephanie Crook-Angus, Jerri Seal, and other co-conspirators; I should stay in my Negro place and not report her violations, because that's unprofessional," *id*. at 6;[7]

3) her assertions that "you can't be insubordinate to a criminal who violates protective rules of law," *id* at 14, and "INSUBORDINATION (YOU CAN'T BE INSUBORDINATE TO A CRIMINAL OR INDIVIDUAL who falsify legal documents, create bogus meetings, tamper with production numbers, submit false reports to human resources, defamation and retaliatory acts), ONLY TO A TRUE LEADER OF INTEGRITY," (emphasis in original) *id*. at 18; and,

(4) the rhetorical question: "WHAT IS A MORE EGREGIOUS ACT: ILLEGAL FALSIFICATIONS, BREACHING OR ALTERING DATA, DEFAMATIONS, CREATING FAKE MEETINGS, TORTURING A 63 YEAR OLD WOMAN TO THE POINT OF PARALYSIS (BELL'S PALSY) DURING 2021 OR THE WORD "DUH" SAID TO AN AUDITOR WITH NO INTEGRITY ( STEPHANIE CROOK ANGUS) FOR SABOTAGING MULTIPLE AUDITS OF MINE SINCE 2020-2021?" (emphasis in original). *Id*. at 5.

Plaintiff's position appears to be that she was within her rights to make the comments and communications at issue in order to point out the alleged hostility and wrongdoings of Baumann and others. She further appears to question whether some of the communications at issue can be viewed as defiant or insubordinate.

_____

[7] The Court notes that Plaintiff does not allege that she was actually told by anyone that she "should stay in her Negro place."

The Court finds that Plaintiff fails in her burden of showing that genuine issues of material fact exist on the issue of pretext and of showing that there is sufficient evidence upon which a reasonable jury could reject Defendant's explanation for her termination. First, Plaintiff does not dispute that she wrote the multiple e-mails and communications relied on by Defendant. Second, Plaintiff offers no coherent argument that the decision-makers for her termination did not actually rely upon her communications in finding that her actions were insubordinate and unprofessional and in deciding that these communications warranted her termination. Finally, to the extent that Plaintiff seeks to argue that her communications with management should not be viewed as insubordinate or should be viewed as minimal or innocuous and therefore not a sufficient basis for the decision to terminate her employment, pretext "cannot be shown by attacking the decision itself." *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 490 (6th Cir. 2000) (citing *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 898 (6th Cir. 1997)). Plaintiff's own subjective interpretations or feelings are simply not sufficient to establish pretext. *Rosenthal v. Faygo Beverages, Inc.*, 701 F.App'x 472, 480 (6th Cir. 2017). *See al*so *Holobaugh v. State of Tenn.*, 25 F.3d 1048 (6th Cir. 1994) (stating that a "plaintiff's bald denial of wrongdoing [i]s insufficient evidence to establish pretext").

Ultimately, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen*, 580 F.3d at 401 n.4. This inquiry:

> requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is.... [A]t bottom the question is always whether the employer made up its stated reason to conceal intentional discrimination. . . . At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.

*Id*. There is ample and unrebutted evidence to support Defendant's explanation that Plaintiff was terminated from her employment for insubordination after numerous instances of unprofessional,

19

argumentative, and inappropriate communications from her to management. Plaintiff has not produced evidence from which a reasonable jury could doubt Defendant's explanation, even assuming that Plaintiff established a *prima facie* case. Thus, Defendant is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

Turning now to Plaintiff's Title VII claim of unlawful retaliation, the Court notes that Plaintiff has not clearly defined the parameters of this claim in her underlying charge of discrimination, in her pleadings, or even in her summary judgment filings. She does not herself actually point to any "protected activity" which she engaged in and for which she contends she suffered retaliation. Upon Defendant's exploration of this issue during her deposition, Plaintiff testified that she complained of race discrimination by Baumann to Cooper, Rasmussen, and Hearn starting in approximately June or July 2021. (Docket Entry No. 61-1 at 100-109.)

Plaintiff offers no direct evidence in support of her retaliation claim. Her claim is therefore analyzed as a circumstantial evidence claim under the *McDonnell Douglas* burden shifting framework. *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir.2009). Even if the Court views her deposition testimony as sufficient evidence of protected conduct by her in satisfaction of her *prima facie* case, and even if the Court presumes that Plaintiff can likewise meet the remainder of her *prima facie* case, Plaintiff's retaliation claim fails because she has not created a genuine issue of material fact as to pretext. As explained above in the context of her discrimination claim, the evidence overwhelmingly supports Defendant's explanation that it terminated Plaintiff's employment for insubordination and unprofessional communications. On the record that is before the Court, no reasonable jury could conclude otherwise to find that retaliation was the reason for her

20

termination from employment. Accordingly, Defendant is entitled to summary judgment on Plaintiff's retaliation claim as well.

Title VII is not intended to ensure workplace civility, to redress general employee dissatisfaction, or to remedy every workplace dispute between employees and supervisors. *See Faragher*, 524 U.S. at 788; *Phillips*, *supra*; *Vitt*, *supra*. Title VII further does not give the Court authority to oversee general employment actions or to act as a super personnel board that can second-guess the business judgment of an employer. *See Haughton v. Orchid Automation*, 206 F.App'x 524, 534 (6th Cir. 2006) (noting that "Title VII was not intended to diminish traditional management prerogatives). In the end, Plaintiff's voluminous allegations of wrongdoings by her supervisors, primarily Baumann and Angus, and any questions of fact that arise about these alleged wrongdoings simply do not create genuine issues of material fact in light of the unrebutted evidence that supports Defendant's decision to terminate her employment and the lack of any evidence that could support a reasonable conclusion that Defendant acted with an unlawful animus in terminating Plaintiff's employment.

## RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

(1) The motion for summary judgment filed by Plaintiff Sharon Darlene Redus (Docket Entry No. 60) be **DENIED**;

(2) The motion for summary judgment filed by Defendant Revenue Cycle Service Center, LLC (Docket Entry No. 61) be **GRANTED**,:

(3) Summary judgment be **GRANTED** to Defendant on Plaintiff's Title VII claims and this action b **DISMISSEDWITH PREJUDICE** in its entirety.

21

**ANY OBJECTIONS** to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

22